UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD ROWLETT,

    Plaintiff,                                  Hon. Janet T. Neff

v.                                                Case No. 1:11 CV 1269

MICHIGAN BELL, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Michigan Bell Telephone Company's Motion for Summary Judgment (Dkt. #185) and Defendant Local 4123 Communications Workers of America's Motion for Summary Judgment (Dkt. #200). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motions be **granted** and this matter **dismissed with prejudice**.

### I. Introduction

On November 2, 2011, Ed Rowlett ("**Plaintiff**") sued Michigan Bell Telephone Company ("**Michigan Bell**") and Local 4123 Communications Workers of America ("**Local Union**") in Michigan state court. (Dkt. #1, Ex. 1.) Michigan Bell and the Local Union jointly removed the case to federal court relying on the federal claims asserted. (Dkt. #1.) The case was subsequently referred to the undersigned pursuant to 28 U.S.C. § 636 (Dkt. #8) for report and recommendation under 28 U.S.C. § 636(b)(1)(B).

Previously, the District Court adopted this Court's recommendation to dismiss two of the federal claims against Michigan Bell[1] because they were time-barred. *See Rowlett v. Mich. Bell*, No. 1:11-cv-1269, 2013 WL 308881, at *1 (W.D. Mich. Jan. 25, 2013). Michigan Bell and the Local Union have both moved for summary judgment regarding the remaining claims filed by Plaintiff. (Dkt. #185, #200.) Michigan Bell moved for summary judgment on Plaintiff's remaining wrongful termination claim. (Dkt. #185.) The Local Union moved for summary judgment on Plaintiff's breach of the duty of fair representation claim. (Dkt. #200.) Because the undisputed facts cannot support a finding that the Local Union breached its duty of fair representation, this Court recommends that both Michigan Bell's and the Local Union's motions for summary judgment be granted and that Plaintiff's case be dismissed with prejudice.

## II. Facts

Plaintiff was employed as a customer service representative at Michigan Bell from March 2003 until December 2009. (3d Am. Compl.,[2] pgs. 4-5.) During his entire tenure, he was a member of the Local Union and subject to the negotiated collective bargaining agreement ("CBA") between Michigan Bell and the Local Union. (3d Am. Compl., pg. 4.)

Beginning in 2007, Plaintiff began taking paid time off pursuant to the Family and Medical Leave Act ("FMLA"). (Pl. Dep.[3] 81:17-20, Aug. 23-24, 2012.) In 2008, Plaintiff took a paid short-term disability leave. (Pl. Dep. 84:14-21.) Upon his return from short-term disability leave in November 2008, Plaintiff was informed that he had exhausted his paid FMLA leave for 2008 as well as his disability leave time. (Pl. Dep. 90:11-91:7.)

---

[1] Plaintiff's claims based on the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., and the Family Medical Leave Act, 29 U.S.C. § 2601 et seq.
[2] Dkt #72
[3] Dkt. #199, Ex. 57.

At Michigan Bell, FMLA hours reset every calendar year, and an employee is not eligible for FMLA leave unless he has worked 1,250 hours in the previous twelve months. (Pl. Dep. 86:13-18.) From Plaintiff's perspective, Plaintiff vehemently disagreed with Michigan Bell and the Local Union regarding how the hours-worked threshold should be calculated. (Pl. Dep. 104:11-20.) After being denied an FMLA request in February 2009, Plaintiff attempted to determine exactly when he would become eligible for FMLA leave. (Pl. Dep. 99:17-100:23.) Based on his own calculations (taken from estimates from the company website), Plaintiff believed he was eligible two hours into his shift on March 31, 2009; as such, he left work two hours into his shift and requested FMLA leave; however, Michigan Bell disagreed with his calculation. (Pl. Dep. 102:11-105:17.) Throughout April 2009, Plaintiff was repeatedly informed that he was not eligible for FMLA leave, yet he continued to request it and miss work. (Pl. Dep. 106:11-108:11.) As such, he was terminated in early May 2009. (Pl. Dep. 115:1-117:4.)

The Local Union successfully grieved his termination, resulting in Plaintiff being reinstated with full back-pay in August 2009. (Settlement Agreement,[4] Aug. 19, 2009.) As conditions of his reinstatement, Plaintiff agreed to the following, among other things: (1) all pending grievances were deemed settled; (2) he was reinstated with a status that would result in termination for any future chargeable absences; (3) in 2009, he had never been eligible for FMLA leave; and (4) his time off (between termination and reinstatement) did not count towards the FMLA hours-worked threshold. (Settlement Agreement.)

In September 2009, Plaintiff again began requesting FMLA leave time. (Pl. Dep. 126:1-130:6.) During this time, he was continuously informed that he was not eligible for FMLA leave

---

[4] Dkt. #191, Ex. 18

and encouraged to contact Michigan Bell's Integrated Disability Service Center ("IDSC") to obtain a reasonable accommodation. (Pl. Dep. 134:11-144:2.) However, Plaintiff refused to contact IDSC, instead insisting that he was eligible for FMLA leave. (Pl. Dep. 143:5-12.) In October 2009, Plaintiff was suspended pending termination. (Pl. Dep. 125:9-15.) Plaintiff grieved his termination and was supported by the Local Union when he went before the Review Board. (Pl. Dep. 147:23-149:14.) However, his grievance was unsuccessful. (Pl. Dep. 149:4-7.)

Once the Local Union learned that Michigan Bell would not allow Plaintiff to continue his employment, the Local Union requested that the international union, a separate and distinct legal entity, arbitrate the grievance. (Pl. Dep. 149:25-150:3; *see also* Hinton Aff.[5]) The international union agreed to arbitrate the grievance which caused Michigan Bell's termination decision to be no longer final or binding; however, the CBA states that the decision of the arbitrator will be final and binding upon the parties. (CBA,[6] pg. 24, Apr. 5, 2009.) After his arbitration hearing in February 2011, the arbitrator issued a written opinion denying Plaintiff's grievance. (Arbitration Op.,[7] pg. 11, May 3, 2011.) His termination was then final.

## III. Analysis

*A. Legal Standard for Summary Judgment*

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir.

---

[5] Dkt. #203, Ex. D
[6] Dkt. #188, Ex. 3
[7] Dkt. # 193, Ex. 26

2005); *see also Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). A moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial. *See Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761.

*B. Legal Standard for Hybrid § 301 / Fair Representation Claims*

In order for a plaintiff to prevail on a hybrid claim asserting both a former employer's violation of a CBA and a former union's breach of its duty of fair representation, the plaintiff must satisfy a two-pronged test: (1) the employer breached the terms of the CBA; and (2) the union breached its duty of fair representation owed to the plaintiff. *See Roeder v. Am. Postal Workers Union*, 180 F.3d 733, 737 (6th Cir. 1999). Neither the employer nor the union can be liable for either claim unless both prongs are satisfied. *Id.* (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 165 (1983)).

A union breaches its duty of fair representation if its actions are arbitrary, discriminatory, or in bad faith. *See Vaca v. Sipes*, 386 U.S. 171, 190 (1967); *Roeder*, 180 F.3d at 737; *Linton v. UPS*, 15 F.3d 1365, 1369 (6th Cir. 1994). This standard provides the plaintiff with three separate and distinct avenues to attack a union's duty of fair representation. *See Driver v. U.S. Postal Serv., Inc.*, 328 F.3d 863, 868-69 (6th Cir. 2003) (citations omitted). However, mere negligence by the union is not enough. *See Roeder*, 180 F.3d at 737 (citing *United Steelworkers v. Rawson*, 495 U.S. 362, 372-73 (1990)). Further, a union is not required "to exhaust every possible remedy requested by a member facing disciplinary action." *Id.* at 737-38 (quoting *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 585 (6th Cir. 1994)).

The Sixth Circuit has provided substantial guidance as to what is needed to satisfy each of the three prongs. To be arbitrary, the union's conduct must be "so far outside a wide range of

reasonableness as to be irrational." *See Linton*, 15 F.3d at 1369 (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991)). To be discriminatory, "substantial evidence" must show that the union's conduct was "intentional, severe, and unrelated to legitimate union objectives." *See Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 619 (6th Cir. 2010) (quoting *Amalgamated Ass'n of St., Electric Ry. & Motor Coach Emps. v. Lockridge*, 403 U.S. 274, 301 (1971)). To satisfy the bad-faith prong, a union must "act[] with an improper intent, purpose, or motive . . . encompass[ing] fraud, dishonesty, and other intentionally misleading conduct." *See id.* (quoting *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998)).

In cases where a dispute has proceeded through arbitration with an outcome in favor of the employer, the plaintiff has an additional burden to establish a breach of duty of fair representation. *See Taylor v. Ford Motor Co.*, 866 F.2d 895, 896 (6th Cir. 1989) (citing *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 568 (1976)). In addition to proving that the union's actions were either arbitrary, discriminatory, or in bad faith, the plaintiff must also prove that the breach of duty of fair representation resulted in an erroneous outcome in the arbitration. *See id.*

C. *Local Union's Motion for Summary Judgment*

The facts of this matter make one problem immediately evident – Plaintiff has only named the Local Union as a defendant, but the international union was also involved and, arguably, played a larger role in the ultimate outcome of the arbitration proceeding.

Considering only the actions of the named party, the Local Union, it is difficult to imagine what more Plaintiff expected of his union. While not a matter before this Court, the Local Union successfully negotiated a settlement after his first termination (in May 2009) that resulted in his reinstatement with full back-pay. (Settlement Agreement.) After Plaintiff's

absenteeism again resulted in his termination, the Local Union supported his grievance through the local steps and, after the local steps did not result in a favorable outcome, the Local Union requested that the international union arbitrate the grievance. (Pl. Dep. 147:23-150:3.)

Plaintiff has provided this Court with an abundance of documents purportedly supporting his claim.[8] (Dkt. #227.) However, none of these documents support that the Local Union's actions were arbitrary, discriminatory, or in bad faith. Nothing the Local Union did, whether it be supporting Plaintiff through the grievance process or requesting arbitration in hopes of saving his job, could be deemed "irrational," meaning the arbitrariness prong cannot be satisfied. *See Linton*, 15 F.3d at 1369 (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991)). In his deposition, Plaintiff himself admitted that he did not believe the Local Union discriminated against him and nothing else in the record refutes Plaintiff's belief. (Pl. Dep. 255:1-10.) Finally, Plaintiff has produced no evidence of improper motive or purpose which might support bad faith. If anything, the facts support that the Local Union acted with the sole purpose of trying to help Plaintiff keep his job. Plaintiff's dissatisfaction with the overall outcome does not support a claim of breach of the duty of fair representation. And even if this Court were to somehow determine that the Local Union had breached its duty of fair representation, nothing it did resulted in an unfair outcome before the arbitrator, the standard in cases that have completed a binding arbitration, because the international union managed the process once arbitration was requested.

Turning next to the actions of the international union, even if they could be attributed to the Local Union (i.e., the named union defendant), Plaintiff's claim still fails. Again, Plaintiff has asserted nothing against the international union that would qualify as arbitrary,

---

[8] Despite the fact that much of Plaintiff's submitted "evidence" is irrelevant, inadmissible, or both, because Plaintiff is pro se, this Court did consider it before drafting this recommendation.

discriminatory, or bad faith. Plaintiff disagreed with the arbitration strategy (Pl. Dep. 256:11-257:11), but this alone is not adequate to demonstrate arbitrary actions by the international union, especially considering that the international union employed an objectively reasonable and rational arbitration strategy (*see, e.g.*, Pl. Dep. 330:21-331:21; *see also Roeder*, 180 F.3d at 737-38 (citations omitted)). As with the Local Union, Plaintiff admits that there was no discrimination by the international union. (Pl. Dep. 255:1-10.) And although Plaintiff asserts that the international union representative demonstrated bad faith beginning "[t]he first minute [he] met her" (Pl. Dep. 240:5-8), his evidence does not demonstrate any sort of dishonesty or improper motive by the international union at any time (*see, e.g.*, Pl. Dep. 240:5-:254:25). Finally, even if this Court were to determine that the duty of fair representation had been breached, there is no evidence that the international union did anything to taint the arbitration process. Indeed, there is ample evidence that the international union put forth a reasonable and rational argument before the arbitrator.

*D. Michigan Bell's Motion for Summary Judgment*

If a plaintiff fails in a breach of duty of fair representation claim against the union, the plaintiff necessarily fails in the related wrongful termination claim against the former employer. *See White v. Detroit Edison Co.*, 472 F.3d 420, 425 (6th Cir. 2006). And while it may seem counterintuitive, this all-or-nothing relationship exists even in situations where a court has acknowledged that genuine issues of material fact exist as to whether the employer violated the CBA. *See id.* (noting that summary judgment for the employer was warranted even though the district court had concluded that the wrongful termination claim was worthy of jury review). As the Sixth Circuit explained in *White*: "[L]abor law as it currently stands . . . subordinates certain rights of the individual for those of the collective union." *Id.*

Applying the governing law to the undisputed facts of this matter, Plaintiff's wrongful termination claim against Michigan Bell must fail. As detailed above, Plaintiff's claim that the Local Union breached its duty of fair representation fails; as such, Plaintiff's wrongful termination claim against Michigan Bell necessarily fails. Even if this were not the current state of labor law, Michigan Bell has cited ample evidence that Plaintiff was terminated for "just cause," including a substantiated timeline of Plaintiff's progression in discipline and ultimate termination. (*See* Michigan Bell's Mot. Summ. J.,[9] pgs. 5-14.) Additionally, Michigan Bell correctly points out that an independent arbitrator previously concluded that Plaintiff's termination was for "just cause." (*See* Michigan Bell's Mot. Summ. J., pg. 22.) Rather than pointing to evidence that creates genuine issues of material fact, Plaintiff counters Michigan Bell's motion with unsubstantiated accusations and wild speculation. (*See, e.g.*, Pl.'s Resp. to Michigan Bell's Mot. Summ. J.,[10] pg. 14 ("The company allowed the false testimony of an ex-employee . . . under oath at the arbitration . . . .").) "[S]peculation, conjecture, or fantasy" are not adequate to overcome a well-supported motion for summary judgment. *See Lewis v. Phillip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004) (citations omitted).

---

[9] Dkt. #186
[10] Dkt. #232

**IV. Conclusion and Recommendation**

For the reasons articulated herein, the undersigned recommends that Defendant Michigan Bell Telephone Company's Motion for Summary Judgment (Dkt. # 185) be granted. The undersigned further recommends that Defendant Local 4123 Communications Workers of America's Motion for Summary Judgment (Dkt. # 200) be granted. Because no outstanding claims would remain, the Court also recommends that Plaintiff's case be dismissed with prejudice.

Respectfully submitted,

Date: March 29, 2013  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).